UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JAMIE CLARK, on Behalf of Herself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br> v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>        Defendant. | 3:08-CV-00158-LRH-VPC<br><br>ORDER |

Plaintiff Jamie Clark alleges Defendant Metropolitan Life Insurance Company ("Met Life") breached its contractual obligations, breached its fiduciary duties, and was unjustly enriched after it retained Clark's insurance benefits in Met Life's general investment account. Because Clark has stated claims for breach of contract and breach of a duty arising from a special or confidential relationship, Met Life's motion to dismiss (#26[1]) is granted in part and denied in part.

**I.   Facts and Procedural History**

Plaintiff Jamie Clark is the beneficiary of a Met Life insurance policy purchased by her deceased father. Clark alleges that Met Life breached its contractual obligations when it did not place her benefits into an interest-bearing, money market-type account but rather retained the

---

[1] Refers to the court's docket

benefits in Met Life's general investment account, which has historically earned a much greater return than a money market account. As a result, Met Life earned a greater return on Clark's benefits than it actually paid to her. Clark also alleges that through its actions, Met Life breached several fiduciary duties and was unjustly enriched.

**II.    Jurisdiction**

On January 27, 2009, this court issued an order asking the parties to brief whether the court has subject matter jurisdiction over this case. The court did so because the First Amended Class Action Complaint makes no mention of Met Life's state of incorporation, which this court must determine to have jurisdiction under the Class Action Fairness Act. *See* U.S.C. § 1332(d)(2)(A) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which–(A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ."). As the party removing this case to federal court, Met Life has the burden of establishing federal jurisdiction. *See Wilson v. Republic Iron & Steel. Co.*, 257 U.S. 92, 97 (1921).

Met Life has met its burden of showing this court has subject matter jurisdiction over the present controversy. Met Life has presented evidence that both its state of incorporation and principal place of business is New York. (D'Onofrio Decl. (#47) Ex. A ¶ 3.) Met Life is therefore a citizen of New York. Moreover, Met Life alleges in its notice of removal that Clark is a citizen of Nevada, and the amount in controversy exceeds $5,000,000. (Notice of Removal (#1) at 3.) The court therefore has subject matter jurisdiction over this action.

**III.   Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint need only satisfy the Federal Rule of Civil Procedure 8(a) notice pleading standard. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Thus, Plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

2

1  In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true
2  and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner
3  Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  However, a court does not
4  necessarily assume the truth of legal conclusions merely because they are cast in the form of factual
5  allegations in a plaintiff's complaint.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55
6  (9th Cir. 1994).

7  There is a strong presumption against dismissing an action for failure to state a claim.  *See
8  Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  "The issue is
9  not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence
10  in support of the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other
11  grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  However, a plaintiff's obligation to
12  provide the grounds of her entitlement to relief requires more than labels, conclusions, and a
13  formulaic recitation of the elements of the cause of action.  *Bell Atlantic Corp. v. Twombly*, 127
14  S.Ct. 1955, 1965 (2007).  "Factual allegations must be enough to raise a right to relief above the
15  speculative level on the assumption that all the allegations in the complaint are true (even if
16  doubtful in fact)."  *Id*. (internal citations omitted)

17  While a district court must normally ignore those matters that lie outside the pleadings, it
18  may consider (1) documents physically attached to the complaint, (2) documents of undisputed
19  authenticity that are alleged or referenced within the complaint, and (3) public records and other
20  judicially noticeable evidence.  *Venetian Casino Resort, L.L.C. v. Cortez*, 96 F. Supp. 2d 1102,
21  1106 (D. Nev. 2000).  Moreover, the court need not accept as true allegations contradicting
22  documents that are referenced in the complaint or that are properly subject to judicial notice.  *Lazy
23  Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).
24  ///
25  ///
26

3

## IV. Discussion

### A. Breach of Contract

Met Life's motion to dismiss contends that, even taking Clark's allegations as true, the documents she attaches to the complaint unambiguously show Met Life complied with its contractual obligations. Specifically, Met Life argues that it had no contractual duty to place Clark's benefits into a money market account, rather than Met Life's general investment account, or to disclose how it would invest Clark's funds. The court concludes that based upon the current record, Clark has shown she is entitled to advance her claims through the discovery stage.

In her first amended complaint, Clark relies upon a set of documents called the Claims Folder that Met Life allegedly provided to her. These documents state, in part, the following:

> To help you through what can be a difficult, emotional, and confusing time, we created a method of payment (also called a settlement option)–the Total Control Account *Money Market Option* – to give you the time you need to best decide how you may wish to use your insurance proceeds
>
> . . . .
>
> These are some of the benefits of the Total Control Account *Money Market Option*:
>
> . . . .
>
> FREE – *You pay nothing for this Account*. There are no transaction or monthly service charges, and there is no charge for reordering checks. There are no limits on the number of checks you may write.

(Claims Folder (#14) Ex. 2 at 4) (emphasis added by Clark's complaint).

Clark also relies upon a Total Control Account Booklet ("TCA Booklet"), which provides,

> Over the years beneficiaries have told us that the period following the death of a loved one is the worst time to make long-term financial decisions. So, instead of delivering your proceeds in a lump-sum check, which would require you to decide what to do with it, we have provided the Total Control Account® *Money Market Option* (TCA Account).
>
> . . . .
>
> There is *no cost* to you for the TCA: no charge for writing checks, no monthly maintenance fees, and no charge for ordering additional checks. You may be charged,

4

1     however, for special services (for example, stop payment orders).

2     . . . .

3     How Much Does the Account Cost Me?

4     There is *no monthly service or maintenance fee* for your Account, and there is no charge for withdrawals or for checks. Special services such as stop payment orders, photocopies of checks or statements, wire transfers, and dishonored checks are subject to the current applicable fees of the bank.

7 (TCA Booklet (#14) Ex. 3 at 5, 7, 17 ) (emphasis added by Clark's complaint).

8     Although Met Life makes substantial arguments that it met its obligations under the documents attached to the complaint, the court cannot find as a matter of law that Clark fails to state a claim. Through these same documents, Clark has successfully alleged that Met Life promised to place her benefits in an account labeled a "Total Control Account Money Market Fund." This allegation at least raises a plausible claim that Met Life broke its promise to Clark when it placed her benefits in Met Life's general investment account.

14     **B. Breach of Fiduciary Duty**

15     Met Life also moves to dismiss Clark's claim for breach of a fiduciary duty. While the court agrees that Clark's allegations do not amount to a traditional breach of fiduciary duty claim, Clark's allegations do state a claim for breach of a duty arising from a special or confidential relationship.

19     Attached to Clark's complaint is a letter within the Claims Folder, which provides the following:

21     Metropolitan Life Insurance Company . . . [has] gained valuable experience in assisting people like you through this difficult period. We want to make sure that you have the opportunity to benefit from our experience

23     . . . .

24     We help millions of Americans protect their financial security. Please be assured that we are here to help you in any way we can . . . .

5

(Claims Folder (#14) Ex. 2 at 2.)  Another document in the Claims Folder further provides,

> Prompt, caring claim service is one of our hallmarks.
>
> . . . .
>
> We hope that the Total Control Account will help you rest a little easier knowing that your money is safe, earning a competitive interest rate, and accessible to you when you need it, giving you time to make financial decisions that are right for you.

(Claims Folder (#14) Ex. 2 at 4-5.)  Moreover, Clark references the TCA Booklet, which states the following:

> I. Our Promise to You – The Total Control Account
>
> . . . MetLife promises to try to help you deal with some of the difficulties faced during this time.
>
> . . . Please be assured, MetLife is here to help you through this difficult period . . . and beyond.
>
> Over the years beneficiaries have told us that the period following the death of a loved one is the worst time to make long-term financial decisions. So, instead of delivering your proceeds in a lump-sum check, which would require you to decide what to do with it, we have provided the Total Control Account® Money Market Option (TCA Account).
>
> . . . .
>
> III. Life Advice Program
>
> Helping people deal with the loss of a loved one has always been important to us at MetLife. At this time, many people find themselves—often unexpectedly—with a large sum of money to manage. This can cause anxiety, particularly during the first year after a death. As previously mentioned, you will receive a **Life Advice** monthly newsletter with your TCA Account monthly statement

(TCA Booklet (#14) Ex. 3 at 5, 11.)  Finally, Clark offers a cover letter that accompanied the TCA Booklet:

> [B]e assured that Metropolitan Life Insurance Company is here to help you through this difficult time.
>
> . . . .
>
> Once again, we extend our condolences, and assure you that we are here to help you.

6

(Aug. 24, 2006, Letter (#14) Ex. 4.)

As an initial matter, Met Life is correct that an insurer and insured do not share a fiduciary relationship in a traditional sense. *See Powers v. United Auto. Ass'n*, 979 P.2d 1286, 1288 (Nev. 1999) (describing an insurer's duty to its policyholder as "akin" to a fiduciary relationship). Therefore, this court is not persuaded the Nevada Supreme Court would recognize a traditional fiduciary relationship between an insurer and a beneficiary. Accordingly, Clark has not stated a claim for breach of a fiduciary duty. This finding, however, does not prevent Clark from stating a claim under an alternative legal theory. *See Haddock v. Bd. of Dental Examiners*, 777 F.2d 462, 464 (9th Cir. 1985) ("[A] complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory.").

The Nevada Supreme Court has recognized certain relationships that share characteristics with a fiduciary relationship but do not necessarily give rise to all the duties accompanying a fiduciary relationship. The first of these, a confidential relationship, was described by the Nevada Supreme Court in *Perry v. Jordan* as existing when "when one party gains the confidence of the other and purports to act or advise with the other's interests in mind; it may exist although there is no fiduciary relationship; it is particularly likely to exist when there is a family relationship or one of friendship." 900 P.2d 335, 338 (Nev. 1995). With regard to the duties that arise out of a confidential relationship, the court stated that "[w]hen a confidential relationship exists, the person in whom the special trust is placed owes a duty to the other party similar to the duty of a fiduciary, requiring the person to act in good faith and with due regard to the interests of the other party." *Id.* The court also stated that a confidential relationship requires affirmative disclosure and avoidance of self-dealing. *Id.*

The second relationship that shares characteristics with a fiduciary relationship is a special relationship. "In order to prove the existence of a special relationship, a party must show that (1) the conditions would cause a reasonable person to impart special confidence and (2) the trusted

party reasonably should have known of that confidence." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 881 (9th Cir. 2007) (internal quotation marks omitted) (*quoting Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 935 P.2d 1154, 1160 (Nev. 1997)). Within a special relationship, "[n]ondisclosure will become the equivalent of fraudulent concealment when it becomes the duty of a person to speak in order that the party with whom he is dealing may be placed on an equal footing with him." *Mackintosh*, 935 P.2d at 1159.

The court concludes that the language contained in the documents attached to Clark's complaint is sufficient to support a claim for breach of a duty arising from a confidential or special relationship. Met Life's assurances such as "we are here to help you in any way we can" and "Metropolitan Life Insurance Company is here to help you through this difficult time[,]" coming on the heels of a death in the family, could create the kind of trust that led the Nevada Supreme Court to impose certain duties in a confidential or special relationship. Although these relationships are not fiduciary in the classic sense, Clark has nonetheless alleged facts to support a claim.

The court will also address Met Life's argument that this court should dismiss Clark's breach of fiduciary duty claim because it is precluded by the economic loss doctrine. In *Giles v. Gen. Motors Acceptance Corp.*, the Ninth Circuit, interpreting Nevada law, held that plaintiffs' claims for fraud and conversion were not barred by economic loss doctrine. 494 F.3d 865, 879 (9th Cir. 2007). In that case, the plaintiffs, who owned and operated two car dealerships, sued General Motors Acceptance Corporation ("GMAC") under several causes of action. *Id.* at 869, 871. With respect to their fraud and conversion claims, the plaintiffs alleged that GMAC fraudulently induced them to backdate assignments of certain accounts, which allowed GMAC to collect funds intended for the plaintiffs. *Id.* at 870-71. Moreover, the plaintiffs alleged that even before the backdating, GMAC converted the accounts. *Id.*

Before examining the plaintiffs' claims, the Ninth Circuit summarized Nevada's case law

regarding the economic loss doctrine:

> Broadly speaking, Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability. Nevada law may also bar recovery for other tort claims where the plaintiff's only complaint is that the defendant failed to perform what was promised in the contract. But it does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff.

*Id.* at 879.

With respect to the plaintiffs' fraud claim, the Ninth Circuit reasoned that while the claim "did occur in the context of a contractual relationship between the parties, the claim is not a mere contract claim cloaked in the language of tort." *Id.* at 880. The court further reasoned that GMAC had "an independent 'duty imposed by law' not to commit fraud, a duty not 'arising by virtue of the alleged express agreement between the parties.'" *Id.* (*quoting Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000)).

The Ninth Circuit also concluded that the plaintiffs' conversion claim was not barred by the economic loss doctrine. *Id.* The court reasoned that "none of the parties' prior agreements actually provided for the assignment of the open account funds, and the alleged wrongful taking of the open account funds does not duplicate a contract claim. GMAC had an independent duty imposed under tort law not to take [plaintiffs'] property without legal authority to do so." *Id.*

Based upon its review of the pleadings, this court concludes that the economic loss doctrine does not bar Clark's claims for breach of a duty arising from a confidential or special relationship. While Clark relies upon language in purportedly contractual documents to support her claim for breach of a duty arising from special or fiduciary relationship, Met Life's statements of assurance did not accompany any specific promise of performance. Thus, Clark's claim is not a mere contract claim cloaked in the language of tort. Given this distinction between Met Life's statements of assurance and Met Life's promises of performance, the economic loss doctrine does not defeat Clark's claims at the pleading stage.

9

**C.  Unjust Enrichment**

Last, Met Life argues that Clark has not stated a claim for unjust enrichment because the complaint alleges the parties' relationship was governed by an express contract.  Met Life's argument is well taken.  An unjust enrichment claim cannot be predicated upon an express agreement.  *See Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.").  Although Clark is correct that plaintiffs may plead claims that are inconsistent with one another, Clark's unjust enrichment count standing alone fails to state a claim.  (*See* First Am. Compl. (#14) ¶ 44) ("An undisclosed benefit was obtained by Met Life by its retention and investment of life insurance Benefits belonging to Plaintiff and the Class in a manner inconsistent with its *form life insurance policies and documents* relating to its Total Control Accounts . . . .") (emphasis added).

**V.  Conclusion**

Clark's first amended complaint and its attached documents state claims for breach of contract and breach of a duty arising from a confidential or special relationship.  However, because Clark predicates her entire complaint on an express agreement, she has failed to state a claim for unjust enrichment.

IT IS THEREFORE ORDERED that Defendant's motion to dismiss (#26) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 2nd day of March 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

10