UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

|  |  |
|---|---|
| JAMIE CLARK,<br><br>        Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>        Defendant. | 3:08-cv-00158-LRH-VPC<br><br>ORDER |

Before the court is defendant Metropolitan Life Insurance Company's ("MetLife") motion for summary judgment. Doc. #109.[1] Plaintiff Jamie Clark ("Clark") filed an opposition to which Metlife replied.

Also before the court is Clark's motion for leave to file supplemental briefing on MetLife's motion for summary judgment. Doc. #175.

**I.  Facts and Background**

Non-party Bruce Clark had a $250,000 insurance policy with defendant MetLife. Plaintiff Clark was one of the beneficiaries under the policy.

On August 1, 2006, Bruce Clark died. Clark received a claims package from MetLife. The claims package stated that if the amount of any policy disbursement exceeded $5,000, MetLife will

---

[1] Refers to the court's docket number.

generally establish a Total Control Account Money Market Option[2] ("Total Control Account" or "TCA") unless the beneficiary chooses another method of payment. Clark's step-mother filled out the claim form and Clark signed and returned it without choosing a disbursement option.

On August 24, 2006, MetLife established a TCA account for Clark in the amount of $50,000. At that time, Clark was provided a package including the completed claims forms and a TCA booklet. The TCA booklet contained the Customer Agreement; a checkbook; a Change of Accountholder Information Form; a Beneficiary Designation Form; and a privacy notice. Doc. #111, Exhibit 9. On September 21, 2007, Clark's TCA account was administratively closed due to exhaustion of funds.

Subsequently, Clark filed a class action complaint against MetLife alleging three causes of action: (1) breach of contract; (2) breach of fiduciary duty; and (3) unjust enrichment. Doc. #14. MetLife filed a motion to dismiss (Doc. #26) which the court granted in-part and denied in-part (Doc. #50). The court granted the motion to dismiss as to the unjust enrichment claim and the breach of fiduciary claim. *Id*. However, the court held that Clark had sufficiently pled a claim for breach of a special/confidential relationship and that Clark may pursue such a claim into discovery. *Id*

Thereafter, MetLife filed the present motion for summary judgment on the two remaining claims: (1) breach of contract; and (2) breach of a special/confidential relationship. Doc. #109.

## II.  LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together

---

[2] The TCA is MetLife's version of a retained asset account. The TCA is an interest-bearing account on which the accountholder may write checks at any time. A TCA represents a MetLife liability which its pays from its general corporate assets as checks are written on the account.

2

with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.   Discussion**

**A.   BREACH OF CONTRACT**

To prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages resulting from defendant's breach.

3

*Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006); *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008).

Here, there are two contracts governing MetLife's relationship with Clark: (1) Bruce Clark's insurance policy; and (2) the TCA Customer Agreement. *See* Doc. #111, Exhibit 1; Doc. #111, Exhibit 9(a). The insurance policy provides in relevant part:

> Unless otherwise requested, we may pay the insurance proceeds when the insured dies, or the cash value on surrender of the policy in one sum, or by placing the amount in an account that earns interest. The payee will have immediate access to all or any part of the account.

Doc. #111, Exhibit 1. Additionally, the Customer Agreement provides in relevant part:

> **What is the Total Control Account Money Market Option?**
> It is a settlement option at MetLife . . . which credits money market interest rates on life insurance, annuity, and matured endowment proceeds, and other amounts payable to the Account holder . . . You have total control of the money in your Account in that you can make withdrawals of $250 or more anytime, without penalty or loss of interest. MetLife fully guarantees the principal and all the interest you have earned.
>  . . .
> **What Rate of Interest Will I Earn?**
> MetLife will set the interest rate weekly. If your account balance is $2,500 or more, the rate we set will be equal to or higher than at least one of the following indexes: the prior week's Money Fund Report Averages, Government 7-day Simple Yield (a leading index of government money market mutual fund rates), or the Bank Rate Monitor National Money Market Rate Index (a leading index of rates paid by 100 large banks and thrifts on money market accounts).
>
> Subject to the terms of this Agreement, we guarantee that the effective annual yield on your Account will not be less than 3%, even if money market yields fall below that level. Of course, you always have the right to withdraw your entire Account balance.
>  . . .
> **How Much Does the Account Cost Me?**
> There is no monthly service or maintenance fee for your Account, and there is no charge for withdrawals or for checks. Special services such as stop payment orders, photocopies of checks or statements, wire transfers, and dishonored checks are subject to the current applicable fees of the bank.

Doc. #111, Exhibit 9(a).

Under these contracts, Clark alleges that MetLife breached its contractual obligations when it: (1) did not place her funds in an interest bearing account; (2) did not handle her funds at no cost

4

1 without any service or maintenance fees; and (3) did not place her funds in a money market
2 account. The court shall address each alleged breach in turn.

### 1. INTEREST BEARING ACCOUNT

Pursuant to Bruce Clark's insurance policy, MetLife was required to place Clark's death benefits "in an account that earns interest." Doc. #109, Exhibit 1. In her complaint, Clark alleges that rather than place her benefits in an account that earns interest, MetLife credited her a $50,000 TCA draw against MetLife's general corporate assets which is a breach of the governing contracts. The court disagrees.

Although MetLife concedes that it satisfied all of its TCA liabilities, including Clark's, from its general corporate assets account, it is undisputed that the general corporate asset account is an account that earns interest, and that Clark's $50,000 was placed into that account and earned interest during the time it was active. The fact that assets used to pay Clark's TCA liability were retained in MetLife's general asset account does not make that account any less of an account that earns interest. Moreover, Clark conceded in her deposition that she earned interest on the monies in her TCA account. Doc. #111, Exhibit 18, Clark Depo. p.242 l.23-4 ("Q. Did MetLife set up an account for you? A: Yes . . . Q: Did that account earn interest? A: Yes."). Therefore, the court finds that MetLife met its contractual obligations to place Clark's benefits in an account that earned interest. Accordingly, MetLife is entitled to summary judgment on this breach of contract allegation.

### 2. MAINTENANCE FEES

In her complaint, Clark alleges that MetLife contracted to provide her TCA at no cost to her. The initial claims package stated in pertinent part:

> FREE - *You pay nothing for this Account*. There are no transaction or monthly service charges, and there is no charge for reordering checks. There are no limits on the number of checks you may write.

Doc. #14, Exhibit 2 (emphasis in original). Additionally, the Customer Agreement provided that

5

there would be no maintenance fee or cost for the TCA:

> **How Much Does the Account Cost Me?**
> There is no monthly service or maintenance fee for your Account, and there is no charge for withdrawals or for checks. Special services such as stop payment orders, photocopies of checks or statements, wire transfers, and dishonored checks are subject to the current applicable fees of the bank.

Doc. #109, Exhibit 9(a). Clark argues that based on these statements, MetLife was not authorized to take any fee related to managing the TCA and breached that obligation by charging substantial fees for managing the TCA.

MetLife concedes that it earned over $10 million last year in investment earnings on its general account after paying TCA holders the contractually set interest rate. However, the court finds that the money that was earned was not a management fee but was MetLife's portion of earnings. John D'Onofrio ("D'Onofrio"), a Director in the Life Products Management Department of MetLife, testified in his deposition that MetLife did not take any management fees for managing the TCA, but only retained earnings on the difference between interest earned on the investment of general corporate assets and the paid rate of interest linked to money market rates.[3] Doc. #109, Exhibit 16, D'Onofrio Depo. p.160 l.3-17. The court finds that any profit from investment earnings in excess of its contractual liabilities to TCA account holders is no more a fee or charge than is the profit earned by a bank from investing deposits in a checking account a fee or charge to the depositor. Such margins are critically important to cover operational expenses and provide profits which allow them to stay in business and is not a breach of the governing contracts.

Additionally, the court finds that Clark misconstrues the customer agreement in relation to the "fees" charged by MetLife. The customer agreement, in contrast to Clark's position, does not broadly state that the TCA is being provided at absolutely no cost, but that there is no monthly maintenance or service fee for the account. *See* Doc. #109, Exhibit 9(a) ("There is no monthly

---

[3] For example, if the credited money market rate was 4.2% and MetLife earned 5% on its general account investments, MetLife would keep the .8% difference as investment earnings.

6

1 service or maintenance fee for your account."). The evidence is undisputed that MetLife never
2 charged Clark a monthly fee for managing her TCA account. Accordingly, MetLife is entitled to
3 summary judgment as to this breach of contract allegation.

### 3. MONEY MARKET ACCOUNT

Pursuant to the insurance policy, MetLife was required to place Clark's benefits in an account that earned interest. Doc. #109, Exhibit 1. The account set up by MetLife, entitled the Total Control Account Money Market Option, "credits money market interest rates on life insurance." Doc. #109, Exhibit 9(a). Clark argues that based on this provision and the insurance policy, MetLife was required to provide her with a money market account[4] and breached its contractual obligations when it failed to do so.

In its motion for summary judgment, MetLife concedes that it did not place Clark's benefits into a money market account. However, MetLife argues that there is no policy language that required MetLife to provide Clark with a money market account because the TCA is "a settlement option . . . which *credits* money market interest rates." Doc. #111, Exhibit 9(a) (emphasis added). Further, according to John D'Onofrio ("D'Onofrio"), a Director in the Life Products Management Department of MetLife, the TCA is "[a] money market settlement option [which] is an insurance product," rather than a separate money market account. Doc. #111, Exhibit 16, p.73 l.13-14.

Initially, the court finds that the name of the account, the Total Control Account Money Market Option, is inherently deceptive because it gives the beneficiary the impression that the account is either a money market account, or is associated with a money market account, and contains the same benefits and protections that a money market account offers, namely that the

---

[4] A money market accounts is a type of deposit account, offered by banks, that accrues interest. The money a person keeps in that account is invested, but the institution offering the account does the investing and collects the return offering a lower rate of interest than the actual investment return earned on the funds. *See Goldblatt v. FDIC*, 105 F.3d 1325, 1329 n.3 (9th Cir. 1997).

account is insured by the Federal Deposit Insurance Corporation ("FDIC") if MetLife was to become insolvent and file for bankruptcy. Further, MetLife continually makes reference to money market account rates throughout the TCA Customer Agreement. *See e.g.,* Doc. #111, Exhibit 9(a). Therefore, the court finds that an ordinary reasonable person, provided with the contracts at issue, would be under the impression that they were receiving either a money market account or an account associated with money market protections. Because MetLife concedes that it did not provide Clark a money market account, the court finds that MetLife breached its obligations under the contracts.

However, the court finds that MetLife is entitled to summary judgment on Clark's breach of contract claim because Clark did not suffer any damages as a result of MetLife's breach. The evidence is undisputed that Clark did not actually read or rely on the statements or contracts provided by MetLife. Doc. #109, Exhibit 18, Jamie Clark Depo., p.28-29 l.24-2 ("Q: At - before you signed the claim form did you read any other documents from [MetLife]?  A: I don't believe so. I don't remember reading anything."); Clark Depo., p.29 l.7-13 ("Q: At any time before you signed the claim form did you read any documents from [MetLife]? . . . A: I honestly don't remember going over it."); Clark Depo., p.36 l.1-10 ("Q: Do you recall receiving this TCA kit with your checkbook? A: I do. Q: Did you look it over when you received it? A: . . . I didn't read in detail everything. Q: Understood. Do you recall if you read this document in detail? A: I do not recall reading this in detail.").

Further, Clark testified that she did not understand MetLife's contracts to require a money market account. Doc. #109, Exhibit 18, Clark Depo., p.44 l.8-17 ("Q: Did you understand the paperwork to say that a money market account would be opened in your name? A: I don't really know what a money market account is. I know it's something. It's a thing. I don't exactly know what it is but I know it was - it was an account in my name. It was my money, and that the account was free and there was no charge and that was - those were the things that stuck out to me time and

time again throughout the - just those are things that people like me understand, no charge, free, no fees, all of the interest, your money, your account."). Therefore, the evidence establishes that Clark was not expecting a money market account and the protections that it entails when she submitted her claims forms.

Additionally, it is undisputed that the interest credited to Clark's TCA account, between its establishment in August 2006 and its exhaustion in September 2007, exceeded the National Money Market Rate Index during that time period. Specifically, Clark was credited with interest on her account ranging from 4.2% to 3.8% throughout the account's life[5] while the relevant money market rate index ranged from .78% to .94% during the relevant time period.[6] Thus, Clark earned more interest through MetLife's TCA than she would have earned if the money had been placed in a money market account. Therefore, the court finds that Clark did not suffer any damages as a result of MetLife's breach. Accordingly, MetLife's motion for summary judgment shall be granted as to the breach of contract claim.

### B.   BREACH OF SPECIAL/CONFIDENTIAL RELATIONSHIP

A confidential or special relationship arises from the specific actions and particular situations of the parties. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 882 (9th Cir. 2007). A confidential relationship exists "where one party gains the confidence of the other and purports to act or advise with the other's interests in mind" and is in such a superior position as to exert influence over the other party, while a special relationship requires a showing that (1) the situation would cause a reasonable person to impart special confidence in another, and (2) the trusted party reasonably should have known of that confidence. *Id*. at 881-882. Further, the special confidence that is placed in another must be more confidence and reliance than would be placed in

---

[5] Doc. #109, Exhibit 10; Exhibit 7 (identifying interest rates paid to Clark on a monthly basis).

[6] Doc. #109, Exhibit 11; Exhibit 11b (identifying the relevant money market index rates during the relevant time period).

9

an ordinary person or business carrying out the same activities. *Mackintosh v. Jack Mathews & Co.*, 855 P.2d 549, 550 (Nev. 1993).

Clark argues that a confidential and/or special relationship arose between her and MetLife when MetLife undertook to invest her insurance proceeds and pay her all earnings and gains on such investments. Clark bases the genesis of this relationship on statements in MetLife's claim documentation including:

> Metropolitan Life Insurance Company . . . [has] gained valuable experience in assisting people like you through this difficult period. We want to make sure that you have the opportunity to benefit from our experience.
> . . .
> We help millions of Americans protect their financial security. Please be assured that we are here to help you in any way we can.

Doc. #14, Exhibit 2. Clark also references statements made in the Customer Agreement:

> MetLife promises to try to help you deal with some of the difficulties faced during this time.
> . . .
> Please be assured, MetLife is here to help you through this difficult period . . . and beyond.
> . . .
> Over the years beneficiaries have told us that the period following death of a loved one is the worst time to make long-term financial decisions. So, instead of delivering your proceeds in a lump-sum check, which would require you to decided what to do with it, we have provided the Total Control Account Money Market Option (TCA Account).

Doc. #109, Exhibit 9.

Initially, the court finds that Clark did not place any special confidence in MetLife. Clark bases her purported special confidence entirely upon statements in the documents she received which she concedes she did not read at the time she filled out the claims form or during the time her TCA account was active. Doc. #109, Exhibit 18, Clark Depo., p.28-29 l.24-2. Further, Clark did not rely on anyone at MetLife for advice on financial matters or how her money should be handled. Rather, she relied solely on her step-mother who filled out the claims forms for her. Clark Depo., p.15 l.4-13.

Additionally, the relationship between MetLife and Clark was one of debtor-creditor and

1  under Nevada law Clark must provide evidence of significant "additional ties" beyond a normal
2  business or customer relationship to establish a special or confidential relationship. *See*
3  *Mackintosh*, 855 P.2d at 550. The court finds that there is no evidence that Clark had any ties with
4  MetLife that could rise to such a special relationship. There was never any direct contact between
5  Clark and MetLife outside of the initial claims forms and monthly accountings.
6      Finally, there is no evidence that MetLife knew about any special confidence Clark
7  allegedly placed in it. Clark took no action to provide notice to MetLife that she was placing
8  special confidence in their actions. Absent notice by the other party, there can be no
9  special/confidential relationship. *Giles*, 494 F.3d at 882. Therefore, the court finds that there is no
10 disputed issue of material fact that MetLife did not have a special or confidential relationship with
11 Clark. Accordingly, MetLife's motion for summary judgment shall be granted as to this claim.

    IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. #109) is GRANTED.

    IT IS FURTHER ORDERED that the clerk of court shall enter judgment accordingly.

    IT IS FURTHER ORDERED that plaintiff's motion for leave to file supplemental briefing (Doc. #175) is DENIED.

    IT IS SO ORDERED.

    DATED this 9th day of September, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

11